

**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| I.E. LIQUIDATION, INC., | ) | CASE NO. 06-62179 |
| | ) | |
| Debtor. | ) | ADV. NO. 08-6007 |
| | ) | |
| MICHAEL VUCELIC, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| IDEAL ELECTRIC COMPANY n/k/a | ) | **(NOT INTENDED FOR** |
| I.E. LIQUIDATION, INC., et al., | ) | **PUBLICATION)** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Counter-defendants Inge Perzl Vucelic, Michael Vucelic and Thomas B. Roller (hereafter "Counter-defendants" or "movants")[1] filed a motion to dismiss several counterclaims asserted against them by the official committee of unsecured creditors

---

[1] Unusual nomenclature is used due to the odd procedural status of the case and parties. For example, some Counter-defendants were not plaintiffs.

1

(hereafter "Committee"), the defendants and the counter-claimants (hereafter "Counter-claimants" or "Counter-plaintiffs") in this adversary proceeding. Counter-claimants opposed the relief.

The Court has jurisdiction of this Chapter 11 case pursuant to 28 U.S.C. § 1334 and the General Order of Reference filed in this district on July 16, 1984. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O). Jurisdiction is not contested.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Michael Vucelic (hereafter "Plaintiff M. Vucelic"), as stockholder representative under an Agreement and Plan of Merger related to Electric Machinery Holdings Company (hereafter "EM Holding"), filed this adversary complaint on January 23, 2008 to determine the validity, priority or extent of a lien arising under a Subordinated Promissory Note dated June 28, 2005. The note was originally executed by Debtor payable to Electric Machinery Company, Inc. (hereafter "EMC") in the principal amount of $3,750,000.00. EM Holding later became the holder of the note via an assignment. The need to determine the validity, extent and priority of the lien arises following a sale of Debtor's assets which paid all senior liens, with proceeds remaining for further distribution. Plaintiff contends EM Holding is next in line to the proceeds by virtue of the assignment of the note.

The committee answered the complaint, by virtue of authority granted in a Gibson order[2] and denied the bulk of the allegations, raised several affirmative defenses, and brought fifteen claims against EMC, and Michael Vucelic, Inge Perzl Vucelic, and Thomas B. Roller.[3] Through the counterclaims, Counter-plaintiffs attempt to either subordinate the note or recover money for the benefit of the bankruptcy estate. Several of the counts in the counterclaim are against Michael Vucelic, Inge Perzl Vucelic, and Thomas B. Roller personally, and these Counter-defendants seek dismissal of four of the personal counts alleged in the counterclaim.

Prior to Debtor's petition, Debtor was a subsidiary of Ideal Electric Holding Company (hereafter "IE Holding") and a sister corporation to EMC. In 2001, Debtor

---

[2] Canadian Pac. Forest Prod. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436 (6th Cir. 1995).

[3] All the claims were denominated as counterclaims although Inge Perzl Vucelic and Thomas Roller were not plaintiffs in the original complaint.

2

obtained financing from Bank One, guaranteed by IE Holding. By 2004, Debtor's gross profit was declining, causing it to violate covenants in the Bank One agreement. Bank One agreed to forbear, but conditioned it upon Debtor either finding a lender to refinance the debt or requiring the Vucelics to sign additional personal guarantees. Debtor obtained a commitment from Wells Fargo to refinance the indebtedness, but the refinancing provided a reduced borrowing base. The same day the commitment letter was issued, Debtor issued a note payable to EMC for $500,000.00.[4] Subsequently, before executing the refinancing with Wells Fargo, Debtor executed a secured note in favor of EMC, the Subordinated Promissory Note dated June 28, 2005. Wells Fargo then refinanced the Bank One loans. EMC perfected its secured interests under the note six months after it was signed.

The personal allegations against the Counter-defendants are summed up in paragraph thirty of the counter-complaint: "Ideal's [Debtor's] insolvency had been developing for years and was deepening due to the actions of the Counterclaim Defendants . . . [who] deliberately coordinated and implemented a plan to increase the debt load of Ideal, which was already over-leveraged, and disguise clear equity infusions as debt." At all times relevant to this discussion, Michael Vucelic and Inge Perzl Vucelic were officers and directors of EMC, Debtor, IE Holding and Ideal Electric Holding LLC (hereafter "IE LLC").[5] Thomas Roller was a director of Debtor.

## LAW AND ANALYSIS

Counter-defendants seek dismissal of the four personal counts against them under Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b). Counter-defendants contend that Counter-plaintiff has failed to set forth a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To succeed in gaining dismissal of the counts, it is necessary for the Counter-defendants to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' Conley v. Gibson, 355 U.S. 41, 47 (1957). However, merely providing a "formulaic recitation of

---

[4] Paragraph 21 of the "Answer . . . and Counterclaim" alleges that the note was executed on May 18, 2005. Paragraph 24, however, states that "[o]n or about March 18, 2005 (the same date that the $500,000 EMC note was executed and delivered." The amended answers of the Vucelics and Roller all admit to execution and delivery of the note on May 18, 2005, not March 18, 2005.

[5] Immediately prior to the petition filing, the entities were involved in corporate restructuring. IE Holding changed its name to Electric Machinery Holding Company. One subsidiary, EMC, remained unchanged, and was 100% owned by EM Holding. The shares of the other (Debtor) were spun off and Ideal Electric Holding LLC was created; this entity owned Debtor. Plaintiff alleges that the ownership of Ideal Electric Holding LLC "were owned pro rata by the same persons who were shareholders of EM Holding."

3

the elements of a cause of action" is not satisfactory. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To meet the pleading requirements, the claim alleged must be facially plausible. See Ashcroft v. Iqbal, 129 S.Ct 1937 (2009) (citing Twombly, 550 U.S. at 556). When questions of fact are raised by a dismissal motion, the Court is to accept the facts as true and view any conflicting facts in favor of plaintiff. See Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894 (6th Cir. 2004) (citing Meador v. Cabinet for Human Res., 902 F.2d 474, 475 (6th Cir. 1990) cert. denied, 498 U.S. 867 (1990)).

Because the partial motion to dismiss did not seek dismissal on a count by count basis, a possibility for confusion exists as to the exact relief sought by movants. This is heightened by the confusing nature of the complaint, which appears to state multiple theories or causes of action in one count. Upon review of the partial motion to dismiss, it is clear that the movants seek dismissal of counts five through eight on the following grounds: (1) a fiduciary duty could not have been breached as to creditors because there is no duty owed to creditors by the Counter-defendants, (2) no cause of action exists under any of the counts under a "deepening insolvency" theory, and (3) counter-claimants failed to properly allege self-interest in the relevant transactions by the Vucelics. With regard to count VIII, movants also argue that the count lacked the particularity to satisfy Federal Rule of Civil Procedure 8(a). Later, in a supplemental memorandum, movants also seek dismissal of counts two and four on a similar failure-in-pleading basis. For ease, the Court will provide an analysis on a count-by-count basis and will incorporate relevant decisions of one count when applicable to a separate count.

In order to deal with the confusion outlined in the preceding paragraph, the Court provides the following roadmap. The Court explicitly and specifically finds that directors owe no duty to creditors under Ohio law. To the extent that the causes of action claim dual grounds, including violation of directors' duties, that portion of the complaint survives.

A.  **Count V - Breach of Fiduciary Duty of Care**

Counter-plaintiffs alleged that a more stringent degree of care was imposed on Inge Perzl Vucelic and Michael Vucelic and owed to creditors of Debtor due to their positions and relationship with Debtor and Debtor's insolvency. It is the Counter-plaintiffs' position that issuance of the note to EMC was an effort to promote and protect the Vucelics' interests over that of the corporate creditors.[6] The Vucelics argue that Ohio law does not impose a fiduciary duty on directors and officers for the benefit of creditors. In response, the Counter-plaintiffs deny that the Vucelics duty is limited to shareholders and state that, even it were so limited, a claim has been alleged on behalf of the

---

[6] There is no allegation that Debtor did not receive the funds.

4

shareholders.[7]

The Court must first consider the nature of the claim raised in count five. It is titled "Breach of Fiduciary Duty of Care" and directed at the Vucelics specifically. Paragraph sixty-seven states that the Vucelics owed a duty of care to debtor's shareholders, and because Debtor was insolvent during the subject time period, to Debtor's creditors as well. The parties do not dispute that directors owe a duty of care to shareholders. Statutory law in Ohio provides:

> (E) For the purposes of this section, a director, in determining what the director reasonably believes to be in the best interests of the corporation, shall consider the interests of the corporation's shareholders and, in the director's discretion, may consider any of the following:
>
> (1) The interests of the corporation's employees, suppliers, creditors, and customers . . . .

See O.R.C. § 1701.59(E).

The parties identified two lines of conflicting case authority on the issue of whether a director owes a duty to creditor when a corporation is insolvent or nearing insolvency, while Ohio statutory law states that the "duty" is permissive, not mandatory. See id.; see also Washington Penn Plastic Co., Inc. v. Creative Eng. Polymer Prods., LLC, 2007 WL 2509873 (N.D. Ohio 2007) (unpublished). As cited by the Vucelics, courts have agreed and determined that directors do not owe a fiduciary duty to creditors. See The Official Comm. of Unsecured Creditors of PHD, Inc. v. Bank One, NA, 2004 WL 3721325 (N.D. Ohio 2004) (unpublished); Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker (In re Amcast Indus. Corp.), 365 B.R. 91 (Bankr. S.D. Ohio 2007). On the opposite side, there are cases that find a fiduciary duty to creditors when an entity is either insolvent or operating in the zone of insolvency. See In re National Century Fin. Enter., 504 F.Supp.2d 287, 310-311 (S.D. Ohio 2007) (hereafter "National Century I"); DeNune III v. Consolidated Capital of North America, 288 F.Supp.2d 844 (N.D. Ohio 2003) (citing Thomas v. Matthews, 94 Ohio St. 32, 47 (1916)).

Counter-defendants advance the stronger argument. First, the cases cited by Counter-claimants never mention the Ohio statute directly on point and rely on common

---

[7] Terms used bounce from damage to shareholders to damage to the corporation. Presumably, all are referencing damage to the corporation when discussing damage to the shareholders. See, e.g., Casden v. Burns, 504 F.Supp.2d 272 (N.D. Ohio 2007).

5

law that is nearly a century old through reliance on the Thomas v. Matthews case. *See id.* Conversely, the Amcast decision cited by Counter-defendants provides a review of both the statute and the common law, ultimately determining that the holding in Thomas v. Matthews is not only narrow, but has been substantially displaced and altered by statutory law in Ohio. Amcast, 365 B.R. at 107. Consequently, the arguments set forth in Amcast are most persuasive.

Additionally, the Court recognizes that a legislative body is charged with knowledge of existing law, both statutory law and case law, when enacting new legislation. *See* In re Thymewood Apartments, Ltd., 123 B.R. 969, 979 (S.D. Ohio 1991) (citing Federal Elec. Corp. v. Dunlop, 419 F.Supp. 221 (M.D. Fla. 1976); Ford v. Wainwright, 451 So.2d 471, 475 (Fla. 1984)); *see also* In re Medure, 2002 WL 31114919 (Ohio App. 7 Dist. 2002) (dissenting opinion) (unpublished) (citations omitted); Wachendorf v. Shaver, 149 Ohio St. 231 (1948) (dissenting opinion) (citations omitted). Here, the legislature is presumed to have known that case law existed which made consideration of the interests of creditors mandatory when a company was either insolvent or close to insolvency. However, the legislature specifically chose language that made the consideration of creditors' interests permissive, without exception. This conclusion was reached by each court considering the meaning of the language utilized in O.R.C. § 1701.59(E) and applying well-established canons of statutory construction. *See, e.g.,* Amcast, 365 B.R. 107; Washington Penn Plastic Co., 2007 WL 2509873; PHD, Inc., 2004 WL 3721325 at *5 (citations omitted).

Third, although the Court is aware that it may not be bound to follow a decision of a single district court, *see* In re Parks, 2008 WL 2003163, *8 (Bankr. N.D. Ohio 2008) (citations omitted) (unreported), the Court observes that two district court judges in this district and division declined to impose upon directors a fiduciary duty to consider creditor interests. Washington Penn Plastic Co., 2007 WL 2509873; PHD, Inc., 2004 WL 3721325. While Washington Penn Plastic Co. did not contain an allegation regarding insolvency, and is therefore not directly on point, it did specifically reject the DeNune decision offered by a district court in the western division and adopted Amcast.

Finally, the Court does not want to allow the statute to be used as both a sword and a shield. Accepting the permissive definition of the statute provides directors with the option to consider creditor interests. In certain situations, the permissiveness may afford directors an opportunity or leeway to act in a manner which might otherwise be actionable if there was an absolute duty to consider creditor interests. Creating a mandatory obligation on a director to consider the creditors could create a stifling disincentive and impossible conflict for directors of troubled companies.

This *does not* mean that directors are free to gleefully roll open casks of gasoline on the decks of the burning corporate ship merely because they personally hold the concession on gasoline. Other statutory and common law duties and causes of action

6

abound. This *does* mean that courts are obliged to cease imposing every kind-hearted notion as a legal obligation that may contradict other obligations or render performance of one's duties impossible at worst and personally frightful at best. Not every nice idea is a good idea. Some aren't even nice.

For these reasons, the Court cannot conclude that the law imposes a mandatory obligation on a director to consider creditor interests, even when the entity is insolvent or operating in the zone of insolvency. The Court will therefore dismiss count five to the extent that it attempts to hold Counter-defendants liable for a breach of fiduciary duty for failing to consider creditor interests, as well as any other counts that similarly attempt to improperly impose upon a director the duty to act on behalf of creditors, including counts six and seven.

Count five also included an allegation that Counter-defendants breached their duty of care to the shareholders. Clearly, Counter-defendants owed an obligation to the shareholders, so it is necessary to determine if the Counter-claimants have set forth a claim upon which relief can be granted. Ohio recognizes three elements to a breach of fiduciary duty claim: "(1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom." The Unencumbered Assets, Trust v. JP Morgan Chase Bank (In re National Century Fin. Enterprises, Inc., Inv. Litig., 617 F.Supp.2d 700 (S.D. Ohio 2009) (hereafter "National Century II") (citing Strock v. Pressnell, 38 Ohio St.3d 207, 216 (1988); McConnell v. Hunt Sports Ent., 132 Ohio App.3d 657, 687 (Ohio Ct.App. 1999)). Upon review of the complaint, the Court finds that Counter-claimants have raised facts to support a plausible claim upon which relief could be granted.

Paragraphs six and seven of the counter-complaint alleged that the Counter-Defendants were officers and directors of Debtor. As directors, they owed a fiduciary duty to the shareholders under O.R.C. § 1701.59. This satisfies the first element. As for the second element, it is alleged that the Counter-defendants breached the duty by saddling a struggling company with more debt through the Wells Fargo refinancing and related transactions, as well as transferring liens to EMC in furtherance of the refinancing and loan made by EMC to Debtor, allegedly to protect the directors' own personal interests. [8] (Counter-compl., ¶ 68-69.) The Counter-defendants argue that the allegations are based on a theory of "deepening insolvency" and suggest that no cause of action exists under this theory.

---

[8] It is not clear what percentage of Debtor the Vucelics owned. In their amended answers, at paragraphs two, the Vucelics admit that shares of Debtor were owned 100% by IE Holding (which became EM Holding), and that they "collectively owned or controlled a majority of the shares of the Holding Company." (Am. Answers of M. Vucelic and I. Vucelic, ¶ 2). Presumably, Counter-claimants' claim reference to duty to shareholders is co-extensive with duty to the corporation.

Counter-defendants' recharacterization of the claim is a deflection from the count pled by Counter-claimants. Counter-claimants have not set forth deepening insolvency as a separate cause of action from violation a duty to creditors. It is used as a descriptive term or measure of damages and the two matters, breach of duty and deepening insolvency, are treated as subsuming or overlapping. The Counter-claimants are not only advancing an independent cause of action for deepening insolvency but have set forth a breach of fiduciary duty of care claim. Courts have recognized the overlap in the claims. *See* The Unencumbered Assets, Trust v. JP Morgan Chase Bank (In re National Century Fin. Enter., Inc., Inv. Litig.), 604 F.Supp.2d 1128, 1153 (hereafter "National Century III") (citing Amcast, 365 B.R. at 117 ('most courts have rejected the theory because it is 'duplicative of a claim for breach of fiduciary duty.'" (citations omitted)). Thus, it is not necessary for Counter-claimants to be able to proceed on a deepening insolvency claim because it is unquestioned that they can move forward on the similar breach of fiduciary duty claim.

Turning back to the second element of the claim, in order to avoid dismissal, Counter-claimants must have set forth facts to support a breach of the duty of care to the corporation. The Court finds that the count has been sufficiently pled. The Counter-claimants cite specific events, the incurrence of more debt and grant of liens to EMC, directed by the Vucelics, which allegedly were attempts to protect the Vucelics personally over the interests of the corporation. (Counter-compl., ¶ 69-70). These allegations of self-interest, if proven true, could provide a basis for a breach of one of the Vucelics' various fiduciary duties. The Court recognizes that, because of their ownership interests in Debtor and its holding company, the Vucelics had no opportunity to act in an "uninterested" manner. However, there is a line between acting for one's benefit and benefitting from one's actions. The Counter-claimants have pled facts which, taken as true for the purposes of this motion, could support a finding that the Vucelics were acting in their own interests and not in the interests of the corporation. As a result, the Court concludes that the facts alleged support the second element of a breach of fiduciary duty claim.

Third, Counter-claimants must demonstrate facts to support that the breach of the duty resulted in injury. Paragraph 71 of the counter-complaint alleges that the Vucelics' actions harmed Debtor, and paragraph 70 contains a passing reference to "detriment of the Debtor's other stakeholders," but neither the nature or type of damage is detailed in the counter-complaint. Paragraph 69 of the counter-complaint contains an allegation that "the Vucelics shifted value from an insolvent company that they indirectly controlled (Ideal) to a solvent company that they indirectly controlled (EMC) for their own personal benefit." The actual personal benefit is not described or detailed. While the connection may be tenuous because the counter-complaint clearly states that Debtor was insolvent prior to the Wells Fargo refinancing and related transactions, *see* Countercompl., ¶ 29, a court is instructed to "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can

8

prove no set of facts in support of his claims that would entitle him to relief." Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993) (citing Meador v. Cabinet for Human Res., 902 F.2d at 475). The Court is not weighing or judging facts on a 12(b)(6) motion to dismiss, and is to afford a plaintiff some liberality in its review of a motion to dismiss. *See, e.g.*, Carr v. Home Tech Svcs. Co. Inc., 2005 WL 2600209 at * 1 (W.D. Tenn. 2005) (numerous citations omitted). With this standard in mind, the Court finds that the Counter-claimants have alleged an adequate factual basis for the damage element of a breach of fiduciary care claim as it applies to a duty owed to the shareholders. It is plausible that the actions complained of could have resulted in an injury to the shareholders of Debtor, including a further deterioration in value. This portion of count five, the alleged breach of a fiduciary duty owed to the shareholders, is not dismissed.

### B. Count VI – Breach of Fiduciary Duty of Loyalty

As set forth in section A above, the Court dismisses any portion of this count that is based on a fiduciary duty owed the creditors. To the extent the count survives, the essence of the count is that the directors used those positions to promote their personal interests above those of the corporation. The elements on this claim are the same as those outlined above. As set forth above, Ohio law imposes a duty on directors to consider shareholder interests. Paragraphs 73 through 76 provide a variety of allegations as to ways the duty was violated, thereby satisfying the second element of the cause of action. Paragraph 77 seeks recovery of damages resulting from a list of actions by the directors. The Court finds that the Counter-claimants have set forth allegations sufficient to avoid dismissal of this count.

### C. Count VII - Aiding and Abetting Breach of Fiduciary Duty

Once again, to the extent that this count seeks a recovery based on a duty owed to creditors, that portion of the count is dismissed. Count seven is specifically targeted at Thomas B. Roller (hereafter "Roller"). The Counter-plaintiffs assert that Roller was in a position to stop the Vucelics from engaging in their purported bad conduct (the alleged breaches of their duties to shareholders): "Roller should have demanded that the Vucelics recuse themselves from Ideal's corporate approval process related to the New Infusions, the EMC Loan Documents and the granting of liens and security interests to EMC, but he failed to do so." (Answer and Countercl., ¶ 79).

There is no direct argument on the elements of this claim in the partial motion to dismiss, but the Counter-claimants make an argument for not dismissing the claim in the responsive brief. In a reply and the supplemental memorandum of law, the movants challenge Counter-claimants' absence of facts, but do not address the law. However, movants themselves, in the partial motion to dismiss, cite two factual allegations raised by Counter-claimants where Roller was purportedly aiding and abetting the Vucelics: by

9

"approving the additional unsecured debt and failing to initiate bankruptcy proceedings for Ideal." (Partial M. Dismiss, ¶ 9). Clearly, there are identifiable allegations citing specific events pled, and known to movants, which support a foundation for count VIII. The Counter-plaintiffs seeks to hold him personally liable for the resulting damages. Since movants were seeking dismissal for "stat[ing] no facts to support a claim for aiding and abetting," and this has been proven untrue, the argument must fail. The Court will deny the motion to dismiss count VII.[9]

### D.  Count VIII - Civil Conspiracy

Similar to count seven, the Counter-defendants seek dismissal of this count but fail to thoroughly address it in the motion for partial dismissal. In their reply, however, the Counter-defendants argue that the Counter-claimants have failed to plead facts that rise above a "formulaic recitation of the elements of a cause of action," and point to an absence of allegations of fact supporting the claim. (Reply of Countercl. Defs., ¶ 9.)

As outlined in National Century II,

> [a] civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 419 (1995) (quoting LeFort v. Century 21-Maitland Realty Co., 32 Ohio St.3d (1987)). The elements of a civil conspiracy claim are: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v. New York City Transit Auth., Inc., 90 Ohio App.3d 284, 292 (Ohio Ct.App. 1993).

---

[9] As previously stated, the law was not addressed. After a brief review, the Court is not assured that a claim for aiding and abetting exists under Ohio law. *See* Pavlovich v. National City Bank, 435 F.3d 560, 570 (6th Cir. 2006) (stating "Ohio law is unsettled as to whether this cause of action exists"). Further, the Court can only ponder whether a fiduciary of a corporation can be found liable for aiding and abetting the breach of a fiduciary duty of other fiduciaries of a company. Obviously, the aiding and abetting count is an alternative pleading to the counts against Thomas Roller for breach of his fiduciary duties. Framed slightly differently, the question is whether Thomas Roller could be found not to have violated his fiduciary duty yet still be found liable for aiding and abetting the Vucelics. These questions have not been raised nor addressed, so the Court is not in a position to render a decision.

10

National Century II, 617 F.Supp.2d at 718. Many courts have found that a claim of civil conspiracy is subject to heightened pleading requirements. *See, e.g.,*; Hagen v. U-Haul Co. of Tenn., 613 F.Supp.2d 986 (W.D. Tenn. 2009) (providing overview of the conflicting positions); National Century I, 504 F.Supp.2d 287; Cox v. Crowe, 2009 WL 1562606 (E.D. Ky. 2009) (unpublished) (requiring heightened conspiracy pleading in a § 1983 claim). Since the Counter-defendants did not argue for a heightened pleading standard, and because the Court finds that the Counter-claimants failed to meet even the lower standard, the Court finds the actual requirement to be immaterial for the purpose of this review.

Paragraph eighty-three alleges that "[s]ome or all of the Counterclaim Defendants combined, agreed, and/or mutually undertook to willfully and maliciously undermine and decrease the value of the Debtor, thereby causing injury to the Debtor and/or the Debtor's creditors." This allegation is the heart of the civil conspiracy claim. The Court recognizes that this allegation, standing alone, does little more than recite required elements of a civil conspiracy claim. It is not clear which of the parties are alleged to have conspired together. Was it Roller and both Vucelics? The Vucelics without Roller? There is no hint of any factual predicate for finding who had an agreement or understanding, when or how the plan developed, or how it was carried out in the specific allegations of count eight. Further, there is no recitation of facts identifying the unlawful act apart from the alleged conspiracy. This is a required element. *See* Blessing v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, 244 Fed.Appx. 614, 622-23 (6th Cir. 2007) (citing Fitzgerald v. Roadway Express, Inc., 262 F.Supp.2d 849, 861 (N.D. Ohio 2003) (other citation omitted)).

This failure in pleading does not meet the standards of pleading set forth in Twombly or its progeny, Iqbal. *See* Twombly, 550 U.S. 544; Iqbal, 129 S.Ct. 1937. Federal Civil Rule of Procedure 8(a)(2), adopted into bankruptcy practice by Federal Rule of Bankruptcy Procedure 7008, establishes the baseline for pleading, requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." When the short and plain statement is attacked, as in a Rule 12(b)(6) motion to dismiss, a sufficient factual basis for the claim is required to withstand the dismissal. The Supreme Court's return to a discussion of the standard for pleading demonstrates the difficulty is capturing what constitutes sufficient pleading for any given cause of action. In Twombly, the Supreme Court touted the concept of "plausibility" in determining the requirements for pleading a Sherman Act antitrust conspiracy claim. On the Twombly facts, the Court found that

> stating such a claim requires a complaint with enough
> factual matter (taken as true) to suggest that an agree-
> ment was made. Asking for plausible grounds to infer
> an agreement does not impose a probability requirement
> at the pleading stage; it simply calls for enough fact to

11

> raise a reasonable expectation that discovery will reveal
> evidence of illegal agreement.

Twombly, 550 U.S. at 556 (footnote omitted). Basically, the claim has to be plausible, but not probable.

Iqbal merely offered clarification of the Twombly standard. Prior to Twombly, it was well-established that in analyzing a motion to dismiss, a court was to view all allegations in a complaint as true. *See, e.g.,* Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894; Meador v. Cabinet for Human Res., 902 F.2d 474; Harbin-Bey v. Rutter, 420 F.3d 571 (6th Cir. 2005) (citation omitted). Iqbal made clear that the same was not true for legal conclusions, which are not entitled to a presumption as to truth. Regarding factual allegations, the Supreme Court advised that review will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but has not 'show[n]'–'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." Iqbal, 129 S.Ct. at 1950 (citations omitted).

Here, the Court recognizes that count eight of complaint incorporates all of the other allegations of the complaint. Reviewing the entire complaint, however, the Court cannot find that the Counter-plaintiffs have managed to satisfy the requirements of notice pleading, nor have they met the plausibility requirement of Twombly and Iqbal. Looking at the entire complaint, the Court could attempt to cobble allegations and "create" a claim for Counter-claimants. To do this, however, the Court would have to accept the legal conclusion that any one of the allegations amounted to an unspecified unlawful act. As discussed in Iqbal, this is not a leap that the Court is required to make.

One might naturally harken to the allegations which allege that Roller's complicity in approving the loan to EMC was the result of a conspiracy. The problem is that the Counter-claimants have not even provided the basic facts as to what involvement Roller had. Did he vote to approve the transactions? Did he sign the loan documents? Another possibility is relying on the allegations that the Vucelics were acting to lessen their personal exposure to liability. But, as the movants point out, there is no duty to increase personal liability, so this strains credulity. An effort to weave allegations together to fit the elements of the civil conspiracy count is beyond the scope of the Court's obligation and, in this case, appears only serves to raise more questions. There are too many missing facts to suggest that this was count is anything but recreational activity, be it a fishing expedition or a game of chance. The Court agrees with Counter-defendants on this issue: the Counter-claimants have failed to establish a factual foundation from which the Court can reasonably infer that a civil conspiracy claim is plausible. The motion to dismiss Count VIII is granted.

12

### E. Counts II and IV

In a supplemental pleading filed on June 16, 2009, movants add arguments to dismiss counts two and four. Movants, relying on the recent Supreme Court case of Iqbal, 129 S.Ct. 1937, contend that Counter-claimants failed to meet the standards for pleading. The Counter-claimants argue that Iqbal did not materially change the existing pleading standard, which was met, and further argue that the movants lost their right to challenge these counts when they neglected to raise the arguments in the motion to dismiss, citing Federal Rule of Civil Procedure 12(g).

The Court rejects the latter argument presented by Counter-claimants. Rule 12(g) refers to successive motions. The supplemental memorandum was not a successive motion, but an extension or continuation of the original partial motion to dismiss. The applicable rule is Federal Rule of Bankruptcy Procedure 7015, which incorporates Federal Rule of Civil Procedure 15. Rule 15(d) is specifically on point:

> (d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even thought the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

The Court granted the leave to file the supplemental pleading in its Memorandum Order dated June 24, 2009 and provided Counter-claimants with an opportunity to respond with a supplemental response. Thus, the Court will consider the request to dismiss counts two and four.

Count II is a claim for equitable subordination. The following elements are required to succeed on a claim for equitable subordination:

> (1) the subordinated 'claimant must have engaged in some type of inequitable conduct;' (2) such 'misconduct must have resulted in injury to the [other] creditors or conferred an unfair advantage on the [subordinated] claimant;' and (3) 'equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].' In re Mobile Steel Corp., 563 F.2d 692, 699-700 (5th Cir. 1977).

13

Blair v. Hohenberg (In re Hohenberg), 191 B.R. 694 (Bankr. W.D. Tenn. 1996).

Counter-defendants argue that the allegations do not state a claim for relief because "the conduct is more consistent with innocent behavior than inequitable conduct." (Supplemental Mem., ¶ 6). What Counter-defendants urge is for the Court to read the allegations in the light most favorable to them. This is not the duty of a court on a 12(b)(6) motion. As stated above, on a Rule 12(b)(6) motion, the Court is to accept all factual allegations as true and then, based on the context, determine if the allegations provide more than mere possibility that there is a foundation exists for the claim. The allegations must provide a plausible basis for relief.

The Court finds that the Counter-claimants have set forth factual allegations which support the conclusion that inequitable conduct may have occurred. Here, the subordinated claimant is EMC. It is alleged, in paragraph 34(d), that the shareholders of EMC arranged for the loan with Debtor in order to protect the parent company, in which the Vucelics also had an interest. Further, there was allegedly no vote on the loan transaction between Debtor and EMC and Counter-claimants allege that the entire transaction was rigged to lessen the deterioration in value of the holding company. These factual allegations provide a claim for equitable subordination that is plausible.

In order to satisfy the second element, the Court must find that the inequitable conduct resulted in injury to unsecured creditors or conferred an unfair advantage to EMC. Paragraphs 44 - 46 of the counterclaim plead facts which support the requisite injury. As for the third element, this requires a legal conclusion, but there is no argument that equitable subordination would be counter to the bankruptcy code. The Court therefore concludes that Counter-claimants have sufficiently pled a claim for equitable subordination.

Finally, the Court turns to the fourth count for preferential transfers. Counter-defendants' argument on this count is rejected. The statement that the "allegations in Count VI of the Counterclaim do not contain enough information to provide Counterclaim Defendants with notice of what claims the Creditors' Committee is trying to pursue and therefore do not support a plausible claim for relief," Supp. Memo., p. 5, flouts common sense. Without the benefit of discovery, Counter-defendants seem to expect near exact specificity for each alleged preferential transfer. In paragraph 58 of the counterclaim, the time frame for the transfers is narrowed to three months of 2005, and the Counter-claimants identify an approximate total of the transfers, as well as the reason the transfer were made. Paragraph sixty is more vague, but highlights the beneficiary of the payments, an approximate amount, as well as a time frame. None of the standards addressed by the Court in this opinion require proof of the claim on the face of the complaint, which is tantamount to what the movants request in dismissal of this count. The authorities cited by Counter-claimants in their supplemental responsive brief support the contention that the pleading standard for preference claims is not at the level movants

14

suggest. Dismissal of count four is denied.

## **CONCLUSION**

Under Ohio law, directors do not owe a duty to creditors, although they may consider creditor interests in the exercise of the fiduciary responsibilities. Consequently, any breach of fiduciary duty claims pled based on a breach of duty to creditors cannot survive and are dismissed. The same counts, to the extent they allege breaches based on duties owed to the corporation, survive. Since Counter-claimants have not alleged deepening insolvency as a cause of action, but merely as a measure of damages, there is no deepening insolvency claim to consider for dismissal.

Count seven, for aiding and abetting breach of fiduciary duty, will not be dismissed. The arguments related to the count focused on the lack of a factual foundation and the Court finds this argument to be without merit. There is a factual underpinning for the claim. Similarly, the Court finds that counts two and four have been adequately pled. However, the same is not true of the claim for civil conspiracy. The Court cannot conclude that the Counter-claimants have set forth a plausible claim for civil conspiracy. The allegations are simply not sufficient to adequately plead a claim for civil conspiracy and the Court will dismiss count eight.

An order will be issued contemporaneously with this decision.

# # #

**Service List:**

Gregory P. Amend
1375 E. 9th St.
One Cleveland Center
Cleveland, OH 44114

James W. Ehrman
Kohrman Jackson & Krantz PLL
One Cleveland Center 20th Floor
1375 East Ninth Street
Cleveland, OH 44114-1793

Mary K Whitmer
Kohrman Jackson & Krantz P.L.L.
1375 E. 9th St.
20th Floor
Cleveland, OH 44114

15

John A Polinko
McDonald Hopkins LLC
600 Superior Avenue
Suite 2100
Cleveland, OH 44114

Scott N Opincar
McDonald Hopkins LLC
600 Superior Ave., East
Suite 2100
Cleveland, OH 44114

G. Christopher Meyer
Squire Sanders & Dempsey L.L.P.
4900 Key Tower
127 Public Square
Cleveland, OH 44114-1304

Sherri Lynn Dahl
Squire Sanders & Dempsey
4900 Key Tower
127 Public Square
Cleveland, OH 44114